IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARLENE EVANS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | Case No.04-CV-094-GKF-PJC |
| ASARCO INCORPORATED, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPINION AND ORDER**

This matter comes before the court on defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. No. 104] and defendant Childress Royalty Company's Motion to Adopt and Join in Motion Filed by Other Defendants [Doc. No. 117].  For the reasons set forth below, both motions are granted in part and denied in part.

**I. Background/Procedural Status**

Plaintiffs filed a putative class action complaint in this case on February 9, 2004, seeking medical monitoring, relocation expenses and money damages from alleged contamination caused by defendants' historic mining operations. [Doc. No. 1].  Plaintiffs sought certification of a "Property Owner Class" of "[a]ll individuals and entities who owned or had an interest in real property in the Class Areas as of the date the Class is Certified." [*Id., ¶*55].  Upon plaintiffs' motion and in the interest of judicial economy, the case was stayed pending resolution of the class certification motion in a similar case styled *Cole v. Asarco Incorporated,* Case No. 03-CV-327-GKF-PJC (N.D. Okla.) [Doc. No. 61].  On April 2, 2009, this court denied the Motion for Class Certification in *Cole.  See* 2009 U.S. Dist. LEXIS 28177 (N.D. Okla. Apr. 2, 2009).

On May 12, 2009, the court granted plaintiffs' request to file an amended complaint in this matter. [Doc. No. 86]. The First Amended Complaint was filed on June 1, 2009. [Doc. No. 97]

## II. Allegations of First Amended Complaint

The First Amended Complaint is brought on behalf of some 227 residential, commercial and governmental property owners in Quapaw, Oklahoma, and surrounding areas within the Tar Creek Area, for compensatory and punitive damages for diminution in property values caused by defendants' alleged contamination of the area. [Doc. No. 97, ¶1]. Plaintiffs allege, *inter alia*:

- For more than a century, mining companies extracted lead worth billions of dollars from Quapaw and the surrounding area, with deliberate indifference to public health. [*Id., ¶*2].

- The Defendant mining companies were a major source of the contamination deposited in the area. The Defendants traded public health for profit by intentionally, knowingly and systematically exposing individuals to dangerous levels of lead and other heavy metals and hazardous substances. [*Id.,* ¶3].

- As a result of Defendants' actions, on a daily basis residents recreated, attended school and played on school playgrounds, and resided in homes that were suffused with lead and other hazardous contaminants. Adults in the Tar Creek area suffered dangerous exposure to these same toxic substances while they were children and, like the children of today, the adults are also exposed to these poisons on a daily basis. Because of Defendant's actions and omissions, children and adults are at significant risk of disease. In the wake of their mining activities and corporate practices, Defendants left behind an environmental tragedy. [*Id.,* ¶5].

- The area is situated within the Tar Creek Superfund Site, located in the northeastern portion of Ottawa County, Oklahoma ("Ottawa County"). The Site is a former lead and zinc mining area and is currently ranked in the U.S. Environmental Protection Agency ("E.P.A.") National Priorities List for Uncontrolled Hazardous Waste Sites. The Site first came to the E.P.A.'s attention in 1984 because of acid water discharges from Defendants' abandoned mining operations. In 1994, E.P.A. identified the potential threat to human health posed by the huge mining company

>       wastes deposited by the Defendant mining companies. [*Id.,* ¶6].
>
> •     Approximately 50 million tons of lead wastes (*i.e.* mining tailings) left over from Defendants' mining operations are present at the Tar Creek Superfund Site. These mine tailings, often referred to as "chat", were deposited in hundreds of piles and ponds at the site and contain high concentrations of lead and other heavy metals. Some of the tailing piles approach 200 feet in height and are located in and around Quapaw. [*Id.,* ¶7].
>
> •     The tragedy does not stop with the health risks presented by Defendants' activities. The extent of contamination is so vast that, even where E.P.A. has attempted remedial action, toxins are still contaminating the properties. Where no cleanup has occurred, toxic waste can be found on property belonging to Plaintiffs. As a result, the value of their properties has been diminished to the point where their properties have practically no value. [*Id.,* ¶9].

The First Amended Complaint alleges defendants conducted mining and milling operations in the Tar Creek Area as follows: defendant Blue Tee Corp, formerly known as American Zinc, Leading and Smelting Company, from 1925 through 1952 [*Id.,* ¶12]; Gold Fields Mining, LLC, formerly known as Tri-State Zinc., Inc., from 1927 through 1930 [*Id.,* ¶13]; Doe Run Resources Corporation, formerly known as the Kansas Exploration Company, from 1927 through 1949 [*Id.,* ¶14]; Childress Royalty Company, from 1929 through 1972 [*Id.,* ¶15]; and N L Industries formerly known as St. Louis Smelting and Refining Company, from 1917 through 1944. [*Id.,* ¶16].

Plaintiffs allege mining of lead and zinc in Ottawa County began in the early 1900's and continued until the 1970's. [*Id.,* ¶17]. They contend that, as a result of almost a century of extensive mining in Ottawa County, heavy metals and other hazardous substances, including lead, are present in hazardous concentrations throughout the county. [*Id.,* ¶18]. The milling of ore at the Picher Mining Field produced large quantities of tailings, which were typically

disposed of next to the mill that produced them. [*Id.,* ¶21]. The coursest tailings, chat, along with the intermingled sand-sized tailings were typically disposed of in a pile on the site by means of an elevator or a belt conveyor. [*Id.*] These chat piles were a waste product of the gravity concentration process used by mining companies. [*Id.*] Another process involved flotation-produced finer tailings that were typically pumped into a "tailing pond." [*Id.*]. Such a pond would evaporate, leaving sediment consisting of these tailings. [*Id.*] The chat piles had commercial uses and were often sold as railroad ballast, concrete, aggregate and fill for roads. [*Id.,* ¶22]. In 1986, the Oklahoma Geological Survey estimated that approximately 70 million tons of course tailings remained at the Tar Creek site. [*Id.,* ¶23].

The First Amended Complaint cites a study by the Harvard School of Public Health and the Department of Geosciences at Wellesly College which states, *inter alia,* "Active and abandoned metal mining sites are major sources of metal contamination throughout the world," and "[d]iscarded metal-enriched solids are often stored in large piles that act as persistent toxic metal sources to surrounding ecosystems and residential areas through wind-borne dispersal of fine particles and waterborne transport of dissolved and particulate metals." [*Id.,* ¶34]. According to the First Amended Complaint, the study also stated, "As part of ongoing remediation efforts at mining-impacted sites like Tar Creek, accurate geochemical characterizations of mine waste will be critical for predicting environmental fate and transport of metals and for understanding and minimizing important human and ecological exposure pathways." [*Id.,* ¶35].

The First Amended Complaint states that the U.S. Department of Housing and Urban Development and the E.P.A. noted in a March 1996 regulation:

> Lead affects virtually every system of the body.  While it is harmful to individuals of all ages, lead exposure can be *especially damaging to children, fetuses, and women of childbearing age...*

[*Id.,* ¶25] (emphasis in First Amended Complaint).  The First Amended Complaint also cites a 1991 U.S. Centers for Disease Control and Prevention discussing adverse health effects of lead exposure in children. [*Id.,* ¶31], as well as a 1996 EPA report finding that children are particularly at risk from environmental hazards because their systems are still developing, they eat proportionately more food, drink more fluids and breathe more air per pound of body weight and are outside more than adult and because they are least able to protect themselves. [*Id.,* ¶32].

The First Amended Complaint asserts defendants' past, present and/or continuing acts or omissions constitute a private nuisance in that defendants used, have used or continue to use their property in a manner that:

- has resulted in an unreasonable burden on the property interests of Plaintiffs in the form of personal harm, inconvenience, annoyance, and discomfort incidental to their possessory interest in their properties.

- has unreasonably interfered with Plaintiffs' us and enjoyment of their property.

- has unreasonably interfered with Plaintiffs' property interest by diminishing the value of their properties.

[*Id.,* ¶¶46-48].

The First Amended Complaint also asserts defendants' acts or omissions have injured or endangered plaintiffs' comfort, repose, health or safety; and/or rendered plaintiffs insecure in their lives or in the use of their property, in violation of 50 Okl.St.Ann. §1.1 *et seq.* [*Id.,* ¶¶53-54].

With respect to both the common law nuisance and statutory nuisance claims, the First Amended Complaint asserts "[t]he nuisance defendants created is a continuing nuisance in that it

has continued and remains unabated." [*Id.,* ¶¶51, 56].

Plaintiffs seek compensatory damages for diminution or loss of value of their property and punitive damages for defendants' alleged conscious, intentional, willful or reckless disregard of their rights. [*Id.,* Prayer for Relief, ¶1].

## II. Analysis

The court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005). In making this determination, the Court considers "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969, 1974 (2007)). A claim is subject to dismissal under Rule 12(b)(6) if the factual allegations in the complaint, taken as true, show that the plaintiff is not entitled to relief. *Jones v. Bock,* 549 U.S. 199, 215 (2007).

### A.  Private Nuisance Claim Statute of Limitations

Where the factual allegations establish that the requested relief is barred by the applicable statute of limitations, the claim should be dismissed. *See Ballen v. Prudential Bache Securities., Inc.,* 23 F.3d 335, 336 (10th Cir. 1994); *Cotton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 699 F.Supp. 251, 256 (N.D. Okla. 1988).

Nuisance claims in Oklahoma are subject to the two-year statute of limitations found in 12 O.S. §95(A)(3). *Moneypenney v. Dawson,* 141 P.3d 549, 552  n. 3 (Okla. 2006). Ordinarily, the statute of limitations for the filing of a nuisance action begins when the injury is complete. *Burlington Northern and Santa Fe Railway Company v. Grant,* 505 F.3d 1013, 1028 (10th Cir.

2007)*,* citing *Haenchen v. Sand Products Company, Inc.,* 626 P.2d 332, 334 (Okla. 1981).

However, the First Amended Complaint alleges, "The nuisance that Defendants created is a continuing nuisance in that it has continued and remains unabated." [*Id.,* ¶¶51, 56]. Plaintiffs' claims raise the question of when the statute of limitations begins to run for a continuing, abatable or temporary nuisance.[1] For guidance on this issue, the court looks to the Tenth Circuit's opinion in *Burlington Northern.*[2] In that case, Burlington Northern and Santa Fe Railway Company ("BNSF") and Grant owned adjoining properties that were once the location of an oil refinery which operated from 1917 to 1932. 505 F.3d at 1018. A tar-like material ("TLM") was a waste by-product of the refinery's operation. BNSF's property was located immediately east and downhill from Grant's property. BNSF alleged that in the early 1970s, Grant personally directed, or had reason to know of, substantial earth moving and construction

---

[1]In their Response to the Motion to Dismiss, plaintiffs argue, "If the nuisance in this action is ultimately proven to be not abatable, *i.e.,* is permanent, then the statute of limitations begins to run at such time as it becomes obvious and apparent that the land in question has been permanently damaged." [Doc. No. 110, p. 9 of 19]. This issue, they assert, would be a fact question for the jury. [*Id.*] However, the pending motion must be decided by looking at the complaint itself. As noted above, plaintiffs allege a continuing nuisance, not a permanent nuisance. In an action for continuing nuisance, the statute of limitations is calculated as the two years next preceding the filing of the action rather than the time the nuisance was created. *Haenchen v. Sand Products Company, Inc.,* 626 P.2d 332, 334 (Okla. App. 1981). In such a case, "[plaintiff] will not be barred in bringing his action but must limit proof of damages to the two years next preceding the filing thereof." *Id.* The First Amended Complaint's characterization of these claims as ones for continuing nuisances thus renders plaintiffs' speculation about whether the nuisance might be proven permanent, as well as potential application of the "discovery rule" inapposite.

[2]The Tenth Circuit's interpretation of Oklahoma law in the *Burlington Northern* case is binding on all district courts in the circuit. *See Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 866 (10th Cir. 2003). Plaintiffs cite no Oklahoma state court decisions rendered after the Tenth Circuit's decision in *Burlington Northern.* Thus, to the extent plaintiffs rely on earlier Oklahoma decisions that are inconsistent with *Burlington Northern,* those cases are not precedential in this circuit. *Wankier*, 353 F.3d at 866.

on his property which BNSF contended precipitated the migration of TLM onto its property. BNSF alleged the migration of TLM had continued over a period of decades as a result of repeated heat expansion occurring each summer. BNSF removed the TLM and disposed of it off-site in July 2001, and also constructed a berm on the property line to stop the continued migration of TLM onto its property. BNSF then sued Grant, asserting, *inter alia,* a private nuisance claim and seeking damages for unjust enrichment as a result of BNSF's cleanup activities. At the close of evidence in the trial, the district court entered judgment as a matter of law for Grant on the private nuisance claim based, in part, on its determination that BNSF failed to identify what costs it had expended within the applicable statute of limitations. The Tenth Circuit, applying Oklahoma law, concluded damages recoverable for a continuing temporary nuisance such as that alleged by BNSF are limited to injuries occurring within a two-year period immediately preceding the filing of the lawsuit.[3] The court reasoned:

> The statute of limitations for the filing of a nuisance action begins when the injury is complete. For a continuing temporary nuisance, such as the nuisance alleged by BNSF, the injury is complete upon each alleged invasion, which gives rise over and over to [new] causes of action for damages sustained within the limitations period immediately prior to suit. Injuries which occur outside the two-year look-back period are outside the statute of limitations.

*Id.* at 1028-29 (quotations and citations omitted).

Here, the First Amended Complaint alleges a continuing nuisance, and refers to at least one study that discusses air and water dispersal of toxic wastes from the chat piles and deposits. Taking as true the allegations of the complaint, and applying the holding in *Burlington Northern,*

---

[3]The court cited *Branch v. Mobil Oil Corp.,* 788 F.Supp. 531, 536 (W.D. Okla. 1991); *City of Bethany v. Municipal Securities Co.,* 274 P.2d 363, 367 (Okla. 1954); *Haenchen v. Sand Products Co.,* 626 P.2d 332, 334 (Okla. App. 1981).

it is conceivable plaintiffs could present evidence of damages that occurred from airborne or waterborne migrations or invasions of toxins occurring within the two-year period prior to the filing of the original complaint on February 9, 2004.[4]  Any damages from migrations or invasions occurring before that period, however, are time-barred.  Therefore, defendants' Motion to Dismiss must be granted with respect to any injuries from migrations or invasions which occurred outside the two-year look-back period and denied with respect to injuries from migrations or invasions occurring within the two-year look-back period.

## B.  Statutory Nuisance Claim[5]

The First Amended Complaint purports to assert a statutory nuisance claim pursuant to 50 O.S. §1.1 *et seq.* [Doc. No. 97, ¶¶52-56].[6]  Plaintiffs contend in their response to defendants' Motion to Dismiss that their statutory claim is one for "public nuisance"[7] and, citing 50 O.S. §7, they assert there is no statute of limitations on public nuisance claims.  Under 50 O.S. §7,  "No lapse of time can legalize a public nuisance amounting to an actual obstruction of public right."

---

[4]At this stage, the court does not pass judgment on the issue of whether such invasions or migrations have occurred within the two-year period.

[5]In their Response to Defendants' Motion to Dismiss, plaintiffs stated their intention to file a Motion to Sever this claim on behalf of the City of Quapaw [Doc. No. 110, p. 9 of 19].  Subsequently plaintiffs *did* file a Motion to Sever [Doc. No. 118].  The court does not herein rule on the Motion to Sever.  However, as discussed in §II.C. of this order, the First Amended Complaint fails to allege facts establishing the standing of Debbie Regalado, Town Clerk for the City/Town of Quapaw, to sue on behalf of the City of Quapaw.  Thus, it is questionable at this time whether the City of Quapaw is actually a plaintiff.

[6]This statutory citation appears to be erroneous, as 50 O.S. §1.1 addresses agricultural activities as nuisances.

[7]A "public nuisance" is defined as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."  50 O.S. §2.

As a preliminary matter, the court observes that the First Amended Complaint does not allege any "actual obstruction of a public right." Morever, the Oklahoma Supreme Court has held that while 50 O.S. §7 applies to *abatement* claims, it "does not suspend the operation of the statute of limitations on a claim for damages caused by a public nuisance which obstructs a public right for as long as the nuisance exists." *Branch v. Mobil Oil Corporation,* 788 F.Supp. 531, 536 (Okla. 1991). Plaintiffs in this case have sought monetary damages but *not* abatement. Thus, the two-year statute of limitations applicable to private nuisance claims is also applicable to claims for damages for statutory nuisance. *Id.* As a result, dismissal of claims for injuries arising before the two-year look-back period is appropriate on the statutory nuisance claim.

### C. Standing

The First Amended Complaint states that individual plaintiffs and their properties are identified in a chart attached as Exhibit A. [Doc. No. 97, ¶11]. Exhibit A, in turn, lists named plaintiffs and the street addresses of their property. [Doc. No. 97-2, Ex. A]. Defendants assert the First Amended Complaint fails to allege facts establishing that certain of the plaintiffs have standing to assert claims.

> The United States Supreme Court has framed the standing issue as follows:
>
> In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise....

*Warth v. Seldin,* 422 U.S. 490, 498 (1975). A plaintiff must allege specific, concrete facts demonstrating that the challenged practices harm him and that he personally would benefit in a tangible way from the court's intervention. *Id.* at 580. In examining a challenge to standing, the

court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. *Id.* at 502. However, if the allegations of the complaint are deficient with respect to standing, the court may allow or require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. *Id.* "If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Id.*

Federal Rule of Civil Procedure 17 governs both the determination of a party's capacity to sue and be sued and his or her status as the real party in interest. *Esposito v. United States,* 368 F.3d 1271, 1273 (10th Cir. 2004). The "real party in interest" principle requires that an action "be brought in the name of the party who possesses the substantive right being asserted under the applicable law." *Id.* Capacity, by contrast, refers to "a party's personal right to litigate in a federal court." *Id.* Under Fed.R.Civ.P. 17(b), issues of capacity are to be determined by the law of the individual's domicile–in this case, Oklahoma. In Oklahoma, the "real party in interest" is the party legally entitled to a claim's proceeds. *Aetna Casualty & Surety Co. v. Associates Transports, Inc.,* 512 P.2d 137, 140 (Okla. 1973). The purpose of the real party in interest requirement from the defendant's perspective is to insure that the defendant will not later be subjected to a second suit based on the same cause or claim. *Boston Ave. Management, Inc. v. Associated Resources, Inc.,* 152 P.3d 880, 887 (Okla. 2007).

Exhibit A of the First Amended Complaint lists numerous plaintiffs who purport to sue on behalf of businesses, religious groups, governmental entities or other individuals. The exhibit does not set forth any factual allegations establishing their standing or capacity to do so.

11

Defendants have identified the following categories of plaintiffs whose standing to sue is not supported by any factual allegations:

### 1. Individuals asserting claims for injuries to properties owned by business entities

A number of individuals purport to bring claims for injuries to properties owned by businesses. It is unclear from the face of Exhibit A whether and/or in what capacity those individuals have standing to sue on behalf of the businesses. To the extent the businesses are corporations, then pursuant to 18 O.S. §1016(2), the corporations must sue in their corporate name. *See Mainord v. Sharp,* 569 P.2d 546, 547-58 (Okla. Civ. App. 1977) (corporation, and not individual sole owner of corporation, was real party in interest in action to recover on a debt owed to corporation); *Centra v. Chandler Ins. Co.,* 2000 U.S. App. LEXIS 22609 at *30 (10th Cir. Sept. 7, 2000) (Where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone which has a right of recovery, even though in an economic sense, harm may well be sustained by others.) Similarly, partnerships and limited liability companies must sue and be sued in their own name. 54 O.S. §1-307 and 18 O.S. §2003(1). Banks and trust companies organized under Oklahoma law have the power to sue in their corporate name. 6 O.S. §402(3).

Exhibit A lists the following individuals who purport to sue on behalf of various types of business entities:

- Larry Bingham President For Bingham Sand And Gravel [Doc. No. 97-2, Ex. A, p. 5 of 40]

- Dawn L Bowman Vice President For FDI Postal Properties II Inc [*Id.,* p. 6 of 40]

12

- Gordon K Chirillo President For Higher Call Nursing Center Inc. [*Id.,* p. 8 of 40]
- Bradley Cox President For Bank Of Quapaw [*Id.*]
- Dusty Karnes Vice President For Burggraf Corporation [*Id.,* p. 20 of 40].

The court finds the First Amended Complaint is deficient in that it fails either to name as plaintiffs the corporations or business entities listed above or allege facts establishing the individuals' standing to sue on behalf of those business entities.

### 2. Plaintiffs asserting claims for injuries to property owned by deceased persons

Under Oklahoma law, a decedent's tort claims may only be advanced by a legally appointed representative of the decedent's estate. *See Swearingen v. Bank of Oklahoma,* 134 P.3d 922, 925 (Okla. Civ. App. 2006); 12 O.S. §2025. Exhibit A lists the following individuals who assert claims for injuries to property of deceased persons:

- Lou Ann Barrett Deceased By Richard Barrett [Doc. No. 97-2, Ex. A, p. 4 of 40]
- Margaret D Holder Deceased By William Keith Holder [*Id.,* p. 18 of 40]
- Wayne D Morey Sr Deceased By Ina L Morey [*Id.,* p. 26 of 40]
- Jeffrey W Ray Deceased By Geraldine Shinn [*Id.,* p. 28 of 40]
- Charles O Shinn. Deceased by Geraldine A Shinn
- WR Slagle Estate For Derral Robert Slagle [*Id.,* p. 32 of 40].

The First Amended Complaint is deficient to the extent it fails to set forth facts establishing these plaintiffs are personal representatives of the estates of the deceased individuals.

### 3. Individuals suing on behalf of unincorporated associations, churches and religious societies

Under Oklahoma law, members of an unincorporated association may maintain a lawsuit if it appears that the representative will fairly and adequately protect the interests of the association and its members. 12 O.S. §2023.2. An unincorporated church or religious society of three or more people may organize and become capable of suing in its own name by signing articles with certain information about the church and its qualifications of membership. 18 O.S. §562. Exhibit A lists the following individuals who purport to assert claims for injury to property owned by unincorporated associations, churches or religious societies:

- Mike Buzzard Chairman Of The Board For First Christian Church Of Quapaw [Doc. No. 97-2, Ex. A, p. 7 of 40]
- Ernie Redden Director For Freedom From Addiction Through Christ [*Id.,* p. 28 of 40]
- Loyde W Thomas Trustee For First Baptist Church Of Quapaw [*Id.,* p. 35 of 40].

The First Amended Complaint is deficient in failing to identify the nature of these organizations and allege facts establishing the standing of the individuals who purport to act on behalf of the organizations.

### 4. Individuals suing on behalf of a county, municipality, school district or public authorities

"Organized counties" may sue in their own name. 19 O.S. §1(1). Counties shall sue as "Board of County Commissioners of the County of _____." 19 O.S. §4. Exhibit A list "Russell Earls Chairman County Commissioners For Ottawa County" as a plaintiff in this case.

[Doc. No. 97-2, Ex. A, p. 10 of 40]. This does not comport with Oklahoma law.

Similarly, incorporated municipalities and school districts have the power to sue in their own name. 11 O.S. §22-101(1). *See also, Cole,* 2009 U.S. Dist. LEXIS 28177 at *27. School districts have the power to sue and should do so as "Independent School District No. ___ of _____ County, Oklahoma. *See Independent School Dist. No. 9 of Tulsa County v. Glass,* 639 P.2d 1233, 1237-38 (Okla. 1982). Here, Exhibit A lists "Debbie Regalado Town Clerk For City/Town Of Quapaw" [Doc. No. 97-2, Ex. A, p. 29 of 40]. This is improper. Exhibit A also improperly lists "Dennis Earp For Quapaw Schools" [*Id.,* p. 11 of 40]. The city and school district themselves, rather than individual members of their governing bodies, must assert their property claims. *Cole,* 2009 U.S. Dist. LEXIS 28177 at *27, citing *Randolph v. Cantrell,* 707 P.2d 48, 51 (Okla. Civ. App. 1985).

Exhibit A also lists as plaintiffs the following individuals who purport to sue on behalf of various development, public works, utility and housing authorities:

- Debbie Regalado Town Clerk For Quapaw Emergency Med Serv [Doc. No. 97-2, Ex. A, p. 29 of 40]
- Debbie Regalado Town Clerk For Quapaw Public Works Authority [*Id.*]
- EA Freeman For Picher Development Authority [*Id.,* p. 14 of 40]
- EA Freeman For Picher Public Works Authority [*Id.*]

The Second Amended Complaint fails to allege any facts establishing these individuals' standing to sue on behalf of the entities named.

### 5. Individuals suing on behalf of other persons or entities for unknown reasons

Exhibit A lists "Roland Kropp For Marjorie Kropp" as a plaintiff. [*Id.,* p. 22 of 40]. However, it contains no factual allegations establishing what, if any, standing Roland Kropp has to pursue a claim on behalf of Marjorie Kropp. Similarly, Exhibit A lists "Billie Marie Barnes For Revocable Trust" as a plaintiff [*Id.,* p. 4 of 40], without alleging facts establishing the individual's standing to pursue a claim for a revocable trust, or even identifying the revocable trust.

### 6. "TRACI"

Exhibit A lists the name "TRACI" as a plaintiff. [*Id.,* p. 36 of 40]. It is impossible to discern whether "TRACI" is an individual or an entity, and whether it has standing or capacity to sue.

### III. Conclusion

For the reasons set forth above, defendants' Motion to Dismiss [Doc. No. 104] and Childress Royalty Company's Motion to Adopt and Join in Motion Filed by Other Defendants [Doc. No. 117] are granted in part and denied in part. Plaintiffs' claims for private and public nuisance are dismissed to the extent they seek damages for injury to properties occurring before February 9, 2002. Additionally, plaintiffs are granted leave to file an amended complaint on or before March 10, 2010, which either sets forth facts sufficient to establish the standing and capacity of the following individuals to sue, or alternatively substitutes real parties in interest to the claims asserted by these plaintiffs: Larry Bingham, President for Bingham Sand and Gravel; Dawn Bowman, Vice President for FDI Postal Properties II Inc.; Gordon K. Chirillo, President

16

for Higher Call Nursing Center, Inc.; Dusty Karnes, Vice President for Burggraf Corporation; Bradley Cox, President for Bank of Quapaw; Gary Garrett for Garrett Storage; Lou Ann Barrett, Deceased, by Richard Barrett; Margaret D. Holder, Deceased, by William Keith Holder; Wayne D. Morey Sr., Deceased. by Ina L Morey; Jeffrey W. Way. Deceased. by Geraldine Shinn; Charles O. Shinn. Deceased. by Geraldine A Shinn; WR Slagle Estage for Derral Robert Slagle; Ernie Redden, Director for Freedom from Addiciton through Christ; Mike Buzzard, Chairman of the Board for First Christian Church of Quapaw; Loyde W. Thomas for First Baptist Church of Quapaw; Russell Earls Chairman County Commissioners for Ottawa County; Russell Earls Chairman County Commissioners for Ottawa Board of County Commissioners; Debbie Regalado, Town Clerk for City/Town of Quapaw; Dennis Earp for Quapaw Schools; Debbie Regalado, Town Clerk for Quapaw Emergency Med Serv.; Debbie Regalado, Town Clerk for Quapaw Public Works Authority; EA Freeman for Picher Development Authority; EA Freeman for Picher Public Works Authority; Roland Kropp for Marjorie Kropp; Billie Marie Barnes for Revocable Trust; and TRACI.

After March 10, 2010, the court will dismiss the claims of any of the above-listed plaintiffs who do not comply with this order.

ENTERED this 24th day of February, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma